IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGELA GUTIERREZ,

        Plaintiff,

vs.                                                         Civ. No. 20-0339 SCY

ANDREW SAUL,
Commissioner, SSA,

        Defendant.

## MEMORANDUM OPINION AND ORDER[1]

Claimant Angela Gutierrez argues that the Administrative Law Judge ("ALJ") who denied her claim for disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, committed error in evaluating the opinion of an examining consultant. The consultant in question produced the only opinion in the record from a medical provider who actually examined Ms. Gutierrez, but the ALJ discounted it on the basis that it was inconsistent with the longitudinal record. In doing so, however, the ALJ failed to consider relevant, probative evidence in the medical record that supports the consultant's opinion. As a result, the Court GRANTS Ms. Gutierrez's motion and remands the matter for further consideration consistent with this Memorandum Opinion.

**I.    Background and Procedural Record**

Claimant Angela Gutierrez suffers from the following severe impairments: schizoaffective disorder, anxiety disorder, posttraumatic stress disorder, and alcohol addiction disorder. Administrative Record ("AR") 17 (Doc. 20). She alleges that she became disabled as of

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Doc. 30.

July 1, 2015. *Id.* She graduated from high school, completed three years of college, obtained insurance and real estate licenses, and has past work experience as a cook, in sales and customer service, and as a floral designer. AR 23, 365, 923, 1343.

On October 31, 2016, Ms. Gutierrez filed applications for Social Security disability insurance benefits under Title II and supplemental security income under Title XVI of the Act. AR 243-50. Her applications were denied on June 8, 2018 (AR 78-79), and upon reconsideration on January 30, 2019 (AR 122-23). Administrative Law Judge ("ALJ") Michael Leppala conducted a hearing on September 25, 2019. AR 32-77. Ms. Gutierrez appeared in person at the hearing with attorney representative Mary Anne D'Arcangelis. *Id.* The ALJ took testimony from Ms. Gutierrez and an impartial vocational expert ("VE"), Catherine Michaels. *Id.*

On December 3, 2019, ALJ Leppala issued an unfavorable decision. AR 12-31. On March 10, 2020, the Appeals Council issued its decision denying Ms. Gutierrez's request for review and upholding the ALJ's decision. AR 1-6. On April 14, 2020, Ms. Gutierrez timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

The Social Security Administrative Record (Doc. 20) was filed on August 27, 2020. On November 10, 2020, Ms. Gutierrez filed her Motion to Reverse and Remand for Rehearing, with Supportive Memorandum (Doc. 25) ("Motion"). The Commissioner filed a Brief in Response on January 11, 2021 (Doc. 27), and Ms. Gutierrez filed a Reply on January 25, 2021 (Doc. 28). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Because the parties are familiar with Ms. Gutierrez's medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

**II.     Applicable Law**

      A.      <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[2] "Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

3

>    most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

    B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court must not substitute its

judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotation omitted). Instead, the Court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991) (citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (subsequent citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed . . . ." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position[,]" *id.* at 1110 (quotation omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in

the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

**III.    Analysis**

In support of her Motion to Remand, Ms. Gutierrez argues that the ALJ erred: by rejecting some limitations from consulting psychologist Mindy Gutow, Ph.D. and non-examining psychologist Richard Sorensen, Ph.D. without sufficient explanation; by failing to explain the limitation related to Ms. Gutierrez's ability to concentrate; by failing to properly evaluate her symptoms and compliance with treatment; and by finding that she could perform the jobs of price marker, housekeeping cleaner, and routing clerk.

It has been challenging to review these arguments due to the brevity of the decision below. The ALJ's decision distilled the approximately 2000-page record down to one paragraph, which the ALJ then essentially repeated four times. *See* AR 18-19, 20-22. Although the ALJ's summary provides a brief snapshot that does not contradict the record, this brief snapshot does not allow the Court to "follow the adjudicator's reasoning" and determine whether he applied the correct legal standards in evaluating Ms. Gutierrez's claim. *See Keyes-Zachary*, 695 F.3d at 1166. As discussed below, the Court sides with Ms. Gutierrez regarding the ALJ's analysis of Dr. Gutow's opinion. Consequently, this matter will be remanded for further proceedings.

<u>The ALJ Erred in Evaluating Dr. Gutow's Opinion.</u>

Ms. Gutierrez challenges the ALJ's treatment of the opinion of Dr. Mindy Gutow, consultative examiner, with respect to limitations Dr. Gutow assessed regarding Ms. Gutierrez's abilities to relate to coworkers and deal with routine changes in the work setting. Doc. 25 at 5-16.

1.      Legal Standard

An ALJ must evaluate and weigh every medical opinion in the record, regardless of its source. *See* 20 C.F.R. § 404.1527(c).[3] In weighing a medical opinion, the ALJ considers several factors: the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion. *Id.* "The record must demonstrate that the ALJ considered all of the evidence," but there is no requirement that the ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton*, 79 F.3d at 1009-10). The ALJ must, however, "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects[,]" *Clifton*, 79 F.3d at 1010 (citations omitted), and provide "'specific, legitimate reasons' for rejecting" an opinion. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Ultimately, the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

2.      Analysis of Dr. Mindy Gutow's Opinion

On March 7, 2018, Dr. Gutow conducted a one-time mental status consultative examination of Ms. Gutierrez, which consisted of a review of some of Ms. Gutierrez's medical records, a clinical interview, a mental status examination, and several evaluations (*e.g.*, serial 3's and memory skills tests). AR at 1343-46. Dr. Gutow diagnosed Ms. Gutierrez with

---

[3] Ms. Gutierrez filed her claim before March 27, 2017; thus 20 C.F.R. § 404.1527 is applicable. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

Schizoaffection Disorder, depressive type, continuous and Specific Phobia, natural environment. AR 1346. As the ALJ noted, Dr. Gutow assessed "marked limitations in interacting with the general public and coworkers and in adapting to changes in the workplace, [and] moderate limitations in understanding and remembering detailed or complex instructions, in carrying out instructions, [and] in working without supervision . . . ." AR 22; *see also* AR 1346. Dr. Gutow explained that these limitations were caused either by "psychotic symptoms" or "disorganization attributable to the impairment." AR 1346.

ALJ Leppala gave Dr. Gutow's opinion "some weight." AR 22. He found that "[w]hile Dr. Gutow examined [Ms. Gutierrez] and provided a useful report in support of her opinion, this opinion was based upon a one-time examination[,] . . . is . . . overly restrictive[,] and [is] inconsistent with the longitudinal record, as described in the analysis of the Disability Determination Services consultant opinions . . . ." *Id.*

Ms. Gutierrez argues that the ALJ: (1) failed to describe which parts of Dr. Gutow's opinion he accepted and which he rejected, in contravention of SSR 96-8p, 1996 WL 374184 (July 2, 1996); (2) erroneously discounted the opinion because it was based on a one-time examination; and (3) failed to adequately consider the § 404.1527(c) factors. Doc. 25 at 8-14. The first argument is a non-starter. The Court may infer that the ALJ discounted Dr. Gutow's opinion to the extent that it is more restrictive than the opinion of Richard Sorenson, the state agency non-examining psychologist, to which the ALJ gave "great weight." AR 22.

The ALJ's second reason for discounting Dr. Gutow's opinion is more troubling. That Dr. Gutow examined Ms. Gutierrez only one time is "neither here nor there." *Florez v. Saul*, No. 19-cv-663 KK, 2020 WL 3607950, at *8 (D.N.M. July 2, 2020). "The frequency of examination is a relevant consideration in determining the weight to accord a *treating* source's opinions," but

8

it plays little to no role in determining what weight to give to a consultative examiner's opinion. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(i) (providing that "the more times you have been seen *by a treating source*, the more weight we will give to the source's medical opinion")). The Tenth Circuit has found that a limited relationship "is not by itself a basis for rejecting [the source's opinion]—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). Indeed, to discount an opinion based on a *one-time* examination is "particularly dubious" where, as here, the record contains no opinions rendered by a treating provider, and the ALJ essentially adopted the opinion of the *non-examining* state agency physician. *See Florez*, 2020 WL 3607950, at *8 n.10.

The Commissioner argues that it was not error for the ALJ to remark that Ms. Gutierrez only saw Dr. Gutow one time, as long as the ALJ gave other good reasons to reject the opinion. Doc. 27 at 15. True, but unhelpful in this case because the Court finds the ALJ did not give other legitimate reasons to support his evaluation of the opinion.

This brings us to Ms. Gutierrez's third argument, that the ALJ's discussion regarding the supportability and consistency of Dr. Gutow's opinion was inadequate. *See* Doc. 25 at 9-10; 20 C.F.R. § 404.1527(c)(3)-(4). Other than opining that Dr. Gutow "provided a useful report," ALJ Leppala did not discuss whether the opinion was supported by the examination. AR 22. However, the ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted).

Here, the ALJ found that Dr. Gutow's opinion was "inconsistent with the longitudinal record as described in the analysis of the Disability Determination Services consultant opinions . . . ." AR 22. The referenced analysis provided that:

> while it was at times noted that [Ms. Gutierrez] was anxious, irritable, agitated, and/or panicked, that her speech was pressured and loud, that her thought process was racing and disorganized, that she exhibited paranoia, that her insight and judgment were poor, that she was impulsive, that she was positive for hallucinations, and that her memory and attention were diminished, it was on other occasions noted – in contradiction to the intensity of her allegations – that her cognitive functioning was average, that her intellect was above average, that her attention was intact, that her memory was normal, that her thought process was linear and logical, that her stream of thought was clear and coherent, that her judgment and insight were intact, that she was cooperative, that her eye contact was good, that her behavior was normal, that her speech was clear with a normal tone and rate, that her grooming and hygiene were appropriate, and that she was reported on multiple occasions as non-compliant with treatment.

*Id.* (citing 376-85, 446-47, 462, 536, 564, 572, 790, 830, 996, 1119, 1179, 1343-47, 1402, 1411, 1521, 1562, 1622, 1727, 1747, 1990, 2146).

Ms. Gutierrez argues that the "ALJ reviewed a very few records" to support his findings, emphasizing records regarding her cognitive functioning, *see* Doc. 25 at 9, and trivializing those that "show[] many instances of crippling anxiety, panic, inability to focus, and delusions." Doc. 28 at 4; *see also* Doc. 25 at 9-14. The Commissioner describes this argument as "an invitation to reweigh the evidence[,]" which of course this Court may not do. *See* Doc. 27 at 16. After reviewing the record and the ALJ's decision, the Court must, however, have confidence that the ALJ at least placed all relevant evidence on the scale. *See* 20 C.F.R. § 404.1527(c) (an ALJ must evaluate and weigh every medical opinion in the record, regardless of its source); *see also Mays*, 739 F.3d at 576 ("The record must demonstrate that the ALJ considered all of the evidence") (quoting *Clifton*, 79 F.3d at 1009-10). Here, the ALJ relied on twenty pages of medical records and a self-function report to support a finding that Dr. Gutow's opinion was inconsistent with the

longitudinal record. This analysis does not demonstrate that the ALJ accounted for and considered all the evidence in the record.

A brief summary of the treatment records ALJ Leppala mentioned is in order. Of the twenty pages[4] he cited, eight pages arguably support Ms. Gutierrez's allegations of disabling symptoms: (1) three visits with Community Lighthouse note an anxious mood, tense affect, a racing/disorganized thought process at times, fair or poor judgment, and a comment that Ms. Gutierrez repeats herself and has difficulty staying on track and answering questions (AR 22 (citing AR 536, 564, 572)); (2) an individual therapy checkbox form from RiverValley Behavioral Health shows anxious mood and visual hallucinations (*id.* (citing AR 830)); (3) an emergency room visit demonstrates paranoid thought content (*id.* (citing 1119)); (4) two visits with Buen Salud note an anxious mood, fair judgment, and complaints of PTSD (*id.* (citing AR 1402, 1411)); (5) an emergency room visit for hip pain notes agitation, an anxious mood, and rapid/pressured speech (*id.* (citing AR 1727)); and (6) a Psychotherapy Intake Note from Healthy Families of Albuquerque records Ms. Gutierrez's self-report that she experiences daily anxiety and panic attacks that result in fatigue, struggles to complete simple tasks, has poor sleep, and self-isolates (*id.* (citing AR 1990)).

The remaining twelve pages of treatment records largely show normal functioning: (1) two visits with Womens [sic] Specialists of New Mexico show a normal mood, appropriate affect, and intact judgment/insight (*id.* (citing AR 448-49, 462)); (2) an emergency room visit for general malaise notes Ms. Gutierrez was cooperative with an appropriate mood and affect (*id.* (citing AR 790)); (3) an emergency room visit for pain due to her bladder sling surgery notes she

---

[4] Outside of treatment records, the ALJ cited Ms. Gutierrez's Function Report and Dr. Gutow's consultative examination, both of which arguably support her claim. *See* AR 22 (citing AR 377-85, 1343-46).

was anxious but had a normal mood and affect (*id.* (citing AR 996)); (3) an emergency room visit for elbow/wrist pain demonstrates normal mood, affect, behavior, judgment, and thought content (*id.* at 19 (citing AR 1179)); (4) three visits with Head and Neck Surgeons of New Mexico reveal normal mood and speech, appropriate affect, intact judgment, and good insight (*id.* (citing AR 1521, 1562, 2146)); and (5) two related records show Ms. Gutierrez asked a provider with Presbyterian Health Services for Lyrica, a pain medication, but the provider refused to prescribe it because of Ms. Gutierrez's "medication seeking behavior and questionable compliance" (*see id.* (citing AR 1622, 1747)).

In contrast to these twenty pages, Ms. Gutierrez points to a variety of treatment records that she believes support her claim. *Id.* at 10-14. Because the burden is on the claimant to point to probative evidence the ALJ ignored, *see Mays*, 739 F.3d at 576, the Court will discuss the evidence Ms. Gutierrez highlights in her brief that the ALJ did not discuss. The Court focuses particular attention on the records documenting Ms. Gutierrez's hallucinations and delusions.

It is true that the ALJ acknowledged some evidence favoring disability, as he is required to do, when he remarked that Ms. Gutierrez "was positive for hallucinations." AR 21. But this one reference to Ms. Gutierrez's struggles with hallucinations vastly downplays the extent to which her troubles permeate the record. "Hallucinations" can encompass anything from mild disturbances in vision to severe mental dysfunction. The ALJ's opinion simply does not grapple with how extreme Ms. Gutierrez's delusions are according to her medical records. For example, Ms. Gutierrez cites treatment records dating back to 2015 that show "magical thinking," abnormal/psychotic thoughts, and paranoid thinking. Doc. 25 at 10-12 (citing, *e.g.*, AR 538 ("belief that she is being monitored by her mother & ex[-husband]"), 798 ("abnormal/psychotic thoughts"), 841 ("she thinks ex-husband is poisoning her make-up & personal belongings which

12

is causing her to have rashes[;] . . . client appears to have paranoid tendencies [sic]"), 848 ("magical thinking")). The record contains several provider reports documenting hallucinations and delusions from 2017-2018, both in counseling sessions and in emergency room visits. *Id.* at 12-14 (citing, *e.g.*, AR 477 (report to gynecologist that her mother "put[] acid on her food and medication"), AR 835 ("client presents with delusions of seeing smoke on her phone & around all lights[,]" "feels like she is on fire most of the time"), 836 ("visual delusions of fire"), 1059 (Ms. Gutierrez asked "to be tested for arsenic" at ER visit; she felt like "her body is burning" because her ex-husband poisoned her), 1118 ("she believes she was sprayed by 'acid' and . . . has 'burns' and 'fumes' coming off of her . . . due to iPhone over[heating]"), 1132 ("panic attack after getting 'shocked'" from picking up iPhone), 1146 (seen at ER for "fixed delusion" regarding poisoning by ex-husband), 1180 (ER reports that Ms. Gutierrez believes mother gave her "'hydrochloride' to poison her"), 1349 ("accused her ex-husband and mother [of trying] to poison her"), 1461 (complaint at ER visit that ex-husband "is 'poisoning' her medications and [she] is having a 'burning sensation' throughout her body")). Other treatment records show that providers have repeatedly documented the need to "rule out" schizophrenia, bipolar disorder, and borderline personality disorder. *See id.* at 11, 13 (citing AR 538 ("R/O [Borderline Personality Disorder]"), 1611 (diagnosing an "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder R/O Schizoaffective Disorder[,] Bipolar type Mixed Episode Mild with Chronic hallucinations[,] . . . Borderline Personality Disorder")); *see also* AR 22 (citing AR 564 ("R/O bipolar")).

      Ms. Gutierrez also points to evidence relevant to her anxiety disorder that the ALJ did not discuss, including records regarding her ability to function socially, her ability to concentrate, the medications she was prescribed, and her scores on a Generalized Anxiety Disorder 7-item scale.

13

Doc. 25 at 11-12 (citing, *e.g.*, AR 522 ("high anxiety resulting in an inability to function socially and in employment"), 574 (listing medications), 582 (listing medications), 1384 ("anxious/fearful thoughts and difficulty concentrating")), 1405-15 (four separate GAD-7 scores indicating "severe anxiety")).

In light of the significant number of treatment records that are consistent with Dr. Gutow's report and opinion, together with the ALJ's scant analysis, the Court finds that the ALJ's evaluation of the opinion is not sufficiently "specific to allow meaningful review." *See Langley*, 373 F.3d at 1123. Here, the ALJ discounted the opinion of the only medical provider to examine Ms. Gutierrez on the basis that it was inconsistent with the record, yet failed to consider extensive evidence that supports the opinion. Because the ALJ did not discuss significantly probative evidence of Ms. Gutierrez's mental impairment, the Court cannot meaningfully review the ALJ's decision. *See Clifton*, 79 F.3d at 1010 (noting that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects") (citations omitted). This is particularly concerning in a case with multiple documented mental limitations. As the Tenth Circuit has opined, "[a] single 'good day' at the doctor's office"—as evidenced in this matter by the few treatment records the ALJ relied on—"does not necessarily signify the lack of any occupational effects from mental disorders." *Groberg v. Astrue*, 505 F. App'x 763, 769 (10th Cir. 2012). The majority of twelve pages the ALJ relied on appear to be observations from emergency room personal and other medical providers made of Ms. Gutierrez while she sought treatment for some type of physical ailment; in other words, they were made during a time in which treatment did not involve her mental condition and medical providers had no cause to pay

14

special attention to her mental condition. In contrast, the numerous pages the ALJ did not discuss concern specific evaluations of Ms. Gutierrez's mental condition.

The Commissioner argues that the medical evidence described above pertains only to Ms. Gutierrez's "cognitive functioning," and that the cognitive limitations the ALJ assessed (in "understanding, remembering, and carrying out detailed instructions") are not inconsistent with Dr. Gutow's opinion. Doc. 27 at 15-16. This is incorrect.  Dr. Gutow did more than assess limitations on Ms. Gutierrez's ability to understand, remember, and carry out detailed instructions. As described above, she assessed moderate to marked limitations in interacting with the general public and coworkers, adapting to changes in the workplace, understanding and remembering detailed or complex instructions, carrying out instructions, and working without supervision. AR 1346. These limitations are not compatible with the ALJ's RFC, which assesses that Ms. Gutierrez can "understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, [and] deal with routine changes in work setting." AR 19. Therefore, to the extent the Commissioner raises a harmless error argument, it fails because Dr. Gutow's opinion is not consistent with the RFC.

Considering the above, the Court finds that the evaluation of Dr. Gutow's opinion deserves a second look and grants Ms. Gutierrez's motion on this issue. The Court declines to reach Ms. Gutierrez's remaining allegations of error, as they may be affected on remand.[5]

---

[5] While the Court does not reach Ms. Gutierrez's argument regarding the ALJ's evaluation of her symptoms under SSR 16-3p (*see* Doc. 25 at 19-23), the undersigned notes that many of the records discussed above are also relevant to an analysis pursuant to SSR 16-3p, yet were similarly ignored. Thus, the ALJ should also revisit this analysis on remand.

## IV. Conclusion

For the reasons stated above, Ms. Gutierrez's Motion to Reverse and Remand for Rehearing, with Supportive Memorandum (Doc. 25) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**